McEvoy, J.
INTRODUCTION
On August 16, 1995, the plaintiff, Donald Pearson, brought suit against the defendant, Christian F. Metz, for negligence. On May 9, 1997, this matter came before the Court for hearing on the defendant’s motion for summaiy judgment. For the reasons discussed below, the defendant’s motion for summaiy judgment is ALLOWED.
BACKGROUND
In September 1994, the defendant, an obstetrician, determined that the roof of the building in which he operated his business, Metz Obstetricians, was leaking. The plaintiff, an experienced roofer,[1] learned from an acquaintance that the defendant needed someone to fix his roof. After arrangements were made, the plaintiff met the defendant at Metz Obstetricians and examined the roof. The plaintiff went up into the attic of the defendant’s building with his flashlight and examined the underside of the roof to ascertain its condition. Thereafter, the plaintiff proceeded to go outside the building to inspect the shingles on the roof with his binoculars. After his inspection, the plaintiff concluded that the leak was caused, in part, by the detachment of the drip edge from the edge of the roof. Moreover, the plaintiff observed that the shingles on the roof were old and deteriorating. While some sections of the roof were in worse condition than other sections, the plaintiff determined that the entire roof needed to be replaced.
The plaintiff explained his conclusions to the defendant. However, the defendant decided that the expense of a new roof would be too burdensome at that time and, therefore, promised the future roof replacement job to the plaintiff if he would temporarily fix the water leakage. The plaintiff explained that the water leakage work would entail the use of staging because of the pitch of the roof. The plaintiff would have to spend three hours to merely set up the staging. Therefore, due to the extra time required in using staging, the plaintiff quoted the price of two hundred dollars to the defendant for the roof repair. The plaintiff maintains that the defendant did not want to pay two hundred dollars for the minor repair and did not want the plaintiff to use staging. The defendant felt the staging would get in the way of his customers entering the building because the building is surrounded by a parking lot.
Although the plaintiff told the defendant that he did not want to repair the roof without the staging, he maintains that he needed the money. Therefore, the plaintiff offered to repair the roof with a ladder for one hundred and twenty-five dollars.[2] The defendant accepted this bid and told the plaintiff to proceed with the work as soon as possible.
Two days after the agreement was reached between the plaintiff and the defendant, the plaintiff showed up at the premises with his own equipment. The plaintiff set up his ladder on the side of the house opposite from where the repairs were needed. The plaintiff chose to go up on this side of the house because he believed the shingles in this area were in better condition. As the plaintiff was walking on the roof to determine where he could tie off, the tabs on the roof broke and the plaintiff slid about twelve feet to the edge of the roof and continued to fall to the asphalt ground. As a result of the fall, the plaintiff alleges that he suffered permanent injuries.
DISCUSSION
Summaiy judgment is granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and of establishing “that the summaiy judgment record entitles the moving party to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summaiy judgment who does not bear the burden of proof at trial must demonstrate the absence of a triable issue either by submitting affirmative evidence *162 negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party then must respond by articulating specific facts which establish the existence of a genuine issue of material face. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
The plaintiff has brought a claim for negligence against the defendant for the defendant’s alleged failure to maintain his property in a reasonably safe condition. As a result of the defendant’s alleged negligence, the plaintiff argues that he suffered permanent injury.
In Massachusetts, the caselaw imposes a duty on the defendant to “(a]ct as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.” Mounsey v. Ellard, 363 Mass. 693, 708 (1973). However, the defendant is “not obligated to supply a place of maximum safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonably indicate.” Toubiana v. Priestly, 402 Mass. 84, 88 (1988). Moreover, a landowner has no duty to protect lawful visitors from risks obvious to persons of average intelligence. Id. at 89.
The plaintiffs injuries arose directly out of repair work he agreed to perform for the defendant. The plaintiff agreed to work on the defendant’s roof in its defective condition with the use of a ladder instead of staging, and therefore, “(h]e assumed all the risks incidental thereto which were open to view or could have been seen if properly examined.” Favereau v. Gabele, 262 Mass. 118, 119 (1928) (citations omitted); See also, Campbell v. Rockland Trust Co., 311 Mass. 663, 666 (1942) (holding that an owner of an apartment house owed no duty to an experienced master plumber and steam fitter, hired by the owner to repair a leak in a pipe leading to a wall radiator and injured when the radiator fell on him while he was repairing the pipe, since the plumber’s injuries were due to risks and dangers incidental to the work which he had contracted to perform). As the Supreme Judicial Court recently held, “(t]he dangers of working on a roof are obvious ... The hazardous nature of ascending a roof is readily apparent to a reasonably intelligent person exercising a minimal care for his own safety.” Lyon v. Morphew, No. 07169 (Sup. Jud. Ct. May 5, 1997), slip op. at 8.
In the case at bar, not only did the plaintiff, as a roofer, know the dangers of working on a roof but he was specifically aware of the risks he would encounter on the defendant’s roof. Prior to commencing repair work on the defendant’s roof, the plaintiff evaluated the roof from the ground and the attic to ascertain its condition. As the plaintiff states in his deposition, he was aware of the deteriorating condition of the roof and the dangers of working on the roof with a ladder instead of staging. However, for his own reasons, which included his need for work and his confidence in using a ladder and roping off, the defendant decided to do the job in an admittedly less safe manner, despite the risks. Therefore, after reviewing the summary judgment materials in the light most favorable to the plaintiff, I find that the injuries sustained by the plaintiff arose out of the work that he agreed to perform and were one of the open and obvious risks of his employment for which no liability arises and which he must be held to have accepted by the nature of his contract for service. Campbell, 311 Mass. at 666. Accordingly, the defendant’s motion for summary judgment is appropriate.[3]
ORDER
For the foregoing reasons, it is hereby ORDERED that Christian F. Metz’s motion for summary judgment is ALLOWED.

 In his deposition, the plaintiff states that he did his first roofing job twenty-four years ago when he was sixteen years old.-The plaintiff maintains that from the time he took his first roofing job, until the time he accepted the offer to fix the defendant’s roof, he worked on “a couple of dozen” roofing jobs.

 Specifically, in his deposition, the plaintiff states that he told the defendant that he would do the repair work with a ladder and he would tie off, which he was comfortable doing, although, it was not the safest way to work on a twelve pitch roof.

 She plaintiff contends that a general issue of material fact exists as to whether the defendant, as an employer, had operational control over the area where the plaintiff, an independent contractor, was injured, rendering the defendant negligent. In support of this theory of liability, the plaintiff cites the Restatement (Second) of Torts §414, which states:
One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.
I find that the plaintiffs reliance on §414 is misplaced. As discussed above, the defendant did not owe the plaintiff a duty under the circumstances presented to the Court. Therefore, in accordance with the language of §414, the defendant is not subject to liability under this provision. Moreover, this is not a circumstance where an employer hired an independent contractor to fix a roof and thereafter directed the contractor to repair the roof in an unsafe manner so that the contractor was not free to do the work in his own way. See Restatement (Second) ofTorts §414 cmt. c. Rather, the alleged unsafe repair of the roof via ladder rather than staging, was an open and obvious term of employment which the plaintiff, himself, suggested to use in order to lower the cost and rid the job of staging. The plaintiff was under no obligation to accept the job under these conditions. Therefore, the plaintiffs attempt to hold the defendant liable for injuries resulting from risks he voluntarily and knowingly took is counter to logic and legal doctrine.